IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TOBIAS ORTIZ and AMELIA ORTIZ,

      Plaintiffs,

vs.                                                   NO.  CIV. 04-774 RB/WDS

**DEPARTMENT OF THE ARMY, ALBUQUERQUE
DISTRICT, CORPS OF ENGINEERS, and
C & R FORESTRY, INC.,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant C & R Forestry, Inc.'s motion for partial summary judgment, which argues that 1) C & R did not act negligently; and 2) Plaintiffs are not intended third party beneficiaries to the contract between C & R and the United States. For the following reasons, the Court finds that genuine issues of material fact exist with respect to both of Plaintiffs' claims and **DENIES** C & R's summary judgment motion.

**I. Facts.**

Plaintiffs Tobias and Amelia Ortiz ("Plaintiffs") own land adjacent to the Pecos River in San Miguel County, New Mexico. (Compl. ¶ 8.) In September 2000, the United States contracted with C & R Forestry, Inc. ("C & R"), an Idaho corporation, to build a dam across the Pecos River. *Id.*; (United States' Mot. to Dismiss at 2, Decl. of Fawn Fox.) This diversion project, called the Pueblo Diversion Structure, was part of a comprehensive federal program to preserve and protect the historic irrigation ditch systems in New Mexico. (Compl. ¶¶ 6, 9, 12, 22-23); (Pls.' Resp. to United States' Mot. to Dismiss, at 1.)

Pursuant to the contract between C & R and the United States, C & R provided its own employees, equipment, liability insurance, and paid all payroll taxes. (United States' Mot. to Dismiss at 2, Decl. of Fawn Fox.) Moreover, C & R was responsible for inspecting the construction site and protecting existing vegetation. *Id.* C & R also had the authority to subcontract portions of the construction work. *Id.*

The United States, however, retained supervisory control over the project, which included the powers of inspection, review, and final approval of the work to "ensure that the project met the contract specifications." (Pls.' Resp. to United States' Mot. to Dismiss, at 3, Ex. C, Decl. of Fawn Fox.) The contract indicated that the United States would pay C & R only after completion and acceptance of all work. (Def.'s Mot. for Partial Summ. J., Ex. A at 68.)

Thereafter, Plaintiffs allowed C & R to set up a construction site on Plaintiffs' land. C & R dug a large trench through Plaintiffs' property to divert the river. C & R removed about two feet of topsoil in the process of digging the trench and set aside the topsoil on Plaintiffs' property so that it could be replaced once the project was completed. (Pls.' Resp. to Def.'s Mot. for Partial Summ. J. at 3.)

The United States and C & R assured Plaintiffs throughout the process that their land would be restored to a condition substantially similar to its original condition after the project was completed. (Compl. ¶ 10.) The specifications for the diversion project required C & R to "restore all landscape features disturbed or removed by this work . . . includ[ing] replanting, or replacement as necessary to a condition similar to the original conditions." (Pls.' Resp. to Def.'s Mot. for Partial Summ. J., Ex. B at 1.3.) On April 3rd and 4th, 2001, Fawn Fox, a representative of the United States, and a representative from C & R, met with Plaintiff Tobias Ortiz for a "pre-final inspection"

of the construction work that occurred on Plaintiffs' property. (Pls.' Resp. to United States' Mot. to Dismiss, at 3, Ex. F.) At that time, Mr. Ortiz informed both representatives that the two feet of topsoil around the construction site on his property had not yet been restored to its original condition. *Id.* at 3, Ex. C, Ex. E. Ms. Fox relayed Mr. Ortiz's concern to C & R after this meeting concluded. *Id.* at Ex. C. A United States punchlist dated April 4, 2001 indicated that C & R was to "Add 2' topsoil to Mr. Ortiz's field where channel was." (Def.'s Mot. for Partial Summ. J., Ex. C-2.)

On April 17, 2001, a revised United States punchlist contained a handwritten "Ok" next to the "Add 2' topsoil" directive. (Def.'s Mot. for Partial Summ. J., Ex. C-3.) On May 1, 2001, the United States conducted a "Final Inspection" and drafted another punchlist that listed two remaining tasks for completion of the project--seeding and moving a temporary fence. (Def.'s Mot. for Partial Summ. J., Ex. D.) The final punchlist made no mention of Plaintiffs' topsoil. *Id.* Later that month, all work on the diversion project stopped and C & R removed its workers and equipment from Plaintiffs' property. (Pls.' Resp. to Def.'s Mot. for Partial Summ. J., at 2.) C & R received full payment from the United States. (Def.'s Mot. for Partial Summ. J. at 3.)

Plaintiffs contend that C & R never restored the topsoil on their property to its pre-construction condition. (Compl. ¶ 19.) On April 30, 2003, Plaintiffs delivered a "Claim for Damage" form to the United States. (Pls.' Resp. to United States' Mot. to Dismiss, at 4, Ex. A.) The United States denied Plaintiffs' claim on January 20, 2004. (Compl. ¶ 16.) On July 9, 2004, Plaintiffs filed a direct negligence claim under the Federal Tort Claims Act ("FTCA") against the United States for failure "to properly restore Plaintiffs' property to substantially the same condition that it was in prior to the river diversion." (Compl. ¶ 19.) Plaintiffs' also sued C & R for negligence and breach of contract.

On June 2, 2005, the Court granted the United States' motion for summary judgment under the independent contractor exception of the FTCA. (Doc. No. 35). The Court, however, allowed Plaintiffs to pursue their state law negligence and breach of contract claims against C & R. *Id.* The Court asserts jurisdiction over these remaining claims under 28 U.S.C. § 1367.

**II. Analysis.**

    **A. Standard of review.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Tenth Circuit has held that "[s]ummary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the Court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id*.

    **B. Plaintiffs' negligence claim.**

Plaintiffs claim that a genuine issue of material fact exists as to whether C & R restored their topsoil to its original condition. C & R, on the other hand, argues that Plaintiffs can not bring a negligence claim against it because C & R merely carried out the plans, specifications and directions the United States gave it and because the restoration of Plaintiffs' topsoil did not constitute a dangerous activity.

In support of its motion for summary judgment, C & R cites to *New Mexico Elec. Serv. Co. v. Montanez*, 89 N.M. 278, 551 P.2d 634 (N.M. 1976). In *Montanez*, the New Mexico Supreme

Court adopted the modern view regarding the duty owed by an independent contractor to third parties:

> [A]n independent contractor may be found . . . liable to third parties who may have been forseeably endangered by the contractor's negligence, even after acceptance of the work. The . . . contractor should not be liable if [it] merely carried out the plans, specifications and directions given [it], at least where the plans are not so obviously dangerous that no reasonable man would follow them and further [liability should] be limited to the extent that if the owner discovers the danger, or it is obvious to him, his responsibility supersedes that of the contractor.

*Id.* at 280-81, 636-37 (citations omitted). There is no need for privity of contract in a claim based on negligence. *See Stotlar v. Hester*, 92 N.M. 26, 28, 582 P.2d 403, 405 (N.M. Ct. App. 1978).

C & R contends that "it is undisputed that C & R merely carried out the Corps' plans and the work was reviewed and accepted." (Def.'s Mot. for Partial Summ. J. at 4.) That the United States paid C& R in full suggests that the United States accepted C & R's performance. Plaintiffs maintain, however, that C & R neglected to restore the two feet of topsoil to their property thereby failing to carry out "the plans, specifications and directions given it" by the United States. *Montanez*, 89 N.M. at 280-81, 551 P.2d at 636-37. A genuine issue of material fact exists as to whether C & R restored the topsoil on Plaintiffs' property. The Court, therefore, DENIES C & R's motion for summary judgment with respect to Plaintiffs' negligence claim.

Plaintiffs also assert a public policy argument in favor of denying C & R's summary judgment motion. Plaintiffs argue that *Montanez* is inapposite because it involved the duty owed by an employer of an independent contractor to the employees of the contractor, which is an entirely different relationship than the one at issue in this case. Plaintiffs also note that the Court dismissed their claim against the United States under the FTCA. They claim, therefore, that if "independent contractors hired by the United States and its agencies were also not liable for negligence simply

5

because they followed the plans and specifications included in their contract with the United States or because the United States 'signed off' on the contractors' work, then injured parties . . . who allow the United States and its contractors to enter . . . their land, would have no recourse in tort against either the United States or its contractor." (Pls.' Resp. to Def.'s Mot. for Partial Summ. J. at 8.) The Court, however, bases its ruling on the premise that the restoration of Plaintiffs' topsoil is a disputed material fact.

### C. Plaintiffs' breach of contract claim.

Plaintiffs also claim that C & R's failure to restore the topsoil on their property to its preconstruction condition constituted a breach of the contract between C & R and the United States. New Mexico's Supreme Court has held that it "is a general rule of law that one who is not a party to a contract cannot maintain suit upon it." *Fleet Mortgage Corp. v. Schuster*, 112 N.M. 48, 49, 811 P.2d 81, 82 (N.M. 1991).  For example, "[i]n construction contracts, . . . [a]bsent privity, a subcontractor owes no duty to a property owner." *Tarin's, Inc. v. Tinley*, 129 N.M. 185, 190, 3 P.3d 680, 685 (N.M. Ct. App. 1999) (citations omitted).  However, "[a] third party may be a beneficiary of such [a] contract, and as a beneficiary may have an enforceable right against a party to a contract." *Schuster*, 112 N.M. at 49, 811 P.2d at 82.  Plaintiffs, therefore, can assert a breach of contract claim against C & R as third party beneficiaries to the contract between C & R and the United States.

The two types of third party beneficiaries are intended beneficiaries and incidental beneficiaries and only intended beneficiaries can seek enforcement of a contract. *Tinley*, 129 N.M. at 191, 3 P.3d at 686.  As the New Mexico Supreme Court explained:

> "A third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others (1) if he is a creditor of the promisee or of some other person and the contract calls for a performance by the

> promisor in satisfaction of the obligation; or (2) *if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract.*"

*McKinney v. Davis*, 84 N.M. 352, 354, 503 P.2d 332, 334 (N.M. 1972) (citations omitted) (emphasis added); *see generally Leyba v. Whitley*, 120 N.M. 768, 907 P.2d 172 (N.M. 1995) (discussing the contract rights of intended third party beneficiaries). In other words, "[t]he paramount indicator of [intended] third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries." *Tinley*, 129 N.M. at 191, 3 P.3d at 686; *see also Schuster*, 112 N.M. at 49-50, 811 P.2d at 82-83.

Plaintiffs bear the burden of showing that they are intended third party beneficiaries of the contract between C & R and the United States. *See Tinley*, 129 N.M. at 191, 3 P.3d at 686 (citations omitted). Plaintiffs can use extrinsic evidence "if the contract does not unambiguously indicate an intent to benefit" them. *Tinley*, 129 N.M. at 191, 3 P.3d at 686 (citations omitted); *see also Schuster*, 112 N.M. at 49-50, 811 P.2d at 82-83 (internal quotations omitted) (stating that "[s]uch intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary.")

In the context of C & R's motion for summary judgment, Plaintiffs appear to have met their burden of showing that they were intended third party beneficiaries of C & R's contract with the United States. Although Plaintiffs were not a named party to the contract, they appear to be members of a class of beneficiaries the contract applied to--landowners affected by the United States' diversion project. The diversion project specifications explicitly required the contractor to restore all landscape features to their original condition. Moreover, both the United States and C & R were aware that

7

two feet of Plaintiffs' topsoil needed to be replaced and the United States listed this task on its punchlist following the pre-final inspection of Plaintiffs' property in April 2001.  On April 3rd and 4th, 2001, representatives from both the United States and C & R assured Plaintiffs that the topsoil on Plaintiffs' land would be restored to its preconstruction condition.  It appears, therefore, that C & R and the United States intended to benefit Plaintiffs (and other landowners whose property rights were infringed upon during the course of the diversion project) by restoring their land to its original condition when the diversion project concluded.

However, C & R contends that even if Plaintiffs are intended third party beneficiaries, two contract principles bar Plaintiffs' claims: waiver and estoppel.  Under New Mexico law, "[t]hird-party beneficiaries generally have no greater rights in a contract than does the promisee."  *Callahan v. New Mexico Fed'n of Teachers et al.*, 104 P.3d 1122, 1130 (N.M. Ct. App. 2005).  C & R argues that the United States, and by implication Plaintiffs, waived any breach of contract claim against C & R when it accepted C & R's performance.  C & R asserts that after the United States requested that it replace two feet of topsoil on Plaintiffs' property, the United States marked "Ok" on a subsequent punchlist and made no further reference to the need to replace topsoil in later inspections of Plaintiffs' property.  Moreover, the United States paid C & R in full, which indicated its acceptance of C & R's work under the terms of the contract.  C & R argues, therefore, that its reliance on the United States' punchlists, other communications, and final payment waives all contract claims and estops both Plaintiffs and the United States from asserting a breach of contract claim against C & R.

Plaintiffs maintain that C & R never replaced the topsoil it removed from their property in the course of the diversion project.  If Plaintiffs are intended third party beneficiaries C & R's failure to restore Plaintiffs' topsoil would constitute a breach of the contract between C & R and the United

States. Therefore, a genuine issue of material fact exists as to whether Plaintiffs are third party beneficiaries to C & R's contract with the United States and whether C & R breached that contract by failing to restore Plaintiffs' topsoil to its preconstruction condition. The Court DENIES C & R's motion for summary judgment with respect to Plaintiffs' breach of contract claim.

### III. Conclusion.

Because a genuine issue of material fact exists as to whether C & R failed to restore Plaintiffs' topsoil to its pre-construction condition, the Court DENIES C & R's summary judgment motion in its entirety.

*/s/ Robert Brack*

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**